# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

                               Case No.  05-37659

HAROLD DEAN ROBBINS
d/b/a ROBBINS CONSTRUCTION CO.

                Debtor


        REGINA KAY TOMBLIN,
        Conservator for Hazel Crabtree


                Plaintiff


                v.                             Adv. Proc. No.  06-3067

HAROLD DEAN ROBBINS;
JEAN A. ROBBINS, and FIRST
NATIONAL BANK OF LaFOLLETTE


                Defendants



## M E M O R A N D U M


**APPEARANCES**:   MARK W. STRANGE, ESQ.
      Post Office Box 5270
      Oneida, Tennessee  37841
    JOHNNY V. DUNAWAY, ESQ.
      Post Office Box 1760
      LaFollette, Tennessee  37766-1760
      Attorneys for Plaintiff

    DAVID A. WINCHESTER, ESQ.
      Post Office Box 1733
      LaFollette, Tennessee  37766
      Attorney for the Defendant/Debtor


**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint Under § 523(c) of the Bankruptcy Code to the [sic] Determine the Dischargeability of a Debt (Complaint) filed by the Plaintiff, Regina Tomblin, Conservator for Hazel Crabtree (Ms. Crabtree),[1] on March 30, 2006, asking the court to award her a judgment against the Defendant/Debtor plus pre-judgment and post-judgment interest, and attorneys' fees, and to make a determination that the judgment is nondischargeable under 11 U.S.C.A. § 523(a)(2), (4), and/or (6) (West 2004).[2]  Based upon the Pretrial Order entered on December 11, 2006, the issues before the court are:

A. Did the Plaintiff have sufficient notice within which to file a complaint to determine the dischargeability of the debt before January 30, 2006?

B. Did the Defendant, through false pretenses, false representations, and/or actual fraud, induce Plaintiff's ward, Hazel Crabtree, to enter into an agreement for the transfer of title of her home to Defendant, proximately causing her loss in violation of 11 USC § 523(a)(2)(A)?

C. Did the Defendant engage in fraud or defalcation, embezzlement, and/or larceny while acting in a fiduciary capacity toward Hazel Crabtree, proximately causing her loss in violation of 11 USC § 523(a)(4)?

D. Did the Defendant willfully and maliciously injure Hazel Crabtree, proximately causing her loss in violation of 11 USC § 523(a)(6)?

The trial was held on February 20, 2007.  The record before the court consists of eleven exhibits introduced into evidence, along with the testimony of five witnesses, Joseph Jones, Assistant Vice President for First National Bank of LaFollette, Carrie Mefford, an employee of First Volunteer Bank, Ms. Crabtree, the Plaintiff, and the Defendant.

---

[1] The Plaintiff was appointed Conservator for her mother, Ms. Crabtree, pursuant to an Order entered by the Chancery Court for Campbell County, Tennessee, on February 10, 2005.

[2] The Complaint also joined Jean A. Robbins, the non-filing spouse of the Debtor, and First National Bank of LaFollette as defendants with the Debtor; however, these two defendants were dismissed pursuant to a Stipulation of Dismissal filed on September 1, 2006.

2

This is a core proceeding.  28 U.S.C.A. § 157(b)(2)(I) (West 2006).

## I

The Debtor filed the Voluntary Petition commencing his case under Chapter 7 on October 15, 2005.  Prior to filing bankruptcy, the Debtor was involved in litigation with Ms. Crabtree in the Circuit Court for Campbell County, Tennessee, styled *Robbins v. Crabtree, et al.*, no. 12,658 (State Court Lawsuit), involving real property located at 181 Crescent Lane, Jacksboro, Tennessee (Real Property), which is occupied by Ms. Crabtree as her residence.  The Plaintiff filed a counter-complaint in the State Court Lawsuit, alleging that the Debtor fraudulently induced Ms. Crabtree into transferring the title to the Real Property to him.[3]  Upon the advice of the attorney who assisted in the filing of his bankruptcy case, the Debtor did not list either the Plaintiff or Ms. Crabtree as a creditor in his schedules or on his creditor matrix.  The Plaintiff's attorney received actual notice of the Debtor's bankruptcy case on January 26, 2006, when a copy of the notice of commencement of case was faxed to him.

The deadline for filing a complaint to determine the dischargeability of a debt or to object to the Debtor's discharge was January 30, 2006.  On January 20, 2006, the Chapter 7 Trustee filed a motion seeking to extend the time in which he could object to the Debtor's discharge under 11 U.S.C.A. § 727(a) (West 2004).  This motion was granted by an Order entered on February 14, 2006, thereby extending the deadline for the Trustee to object to the Debtor's discharge for sixty (60) days

---

[3] Jean A. Robbins and First National Bank of LaFollette were brought into the State Court Lawsuit by the Plaintiff as third-party defendants.  *See supra* n.2.

3

through March 31, 2006. The Plaintiff did not seek an extension of time to file a § 523(c) and/or § 727 complaint. She filed the Complaint initiating this adversary proceeding on March 30, 2006.

The Plaintiff contends that the Debtor, Ms. Crabtree's half-brother, asked Ms. Crabtree to allow him to use the Real Property, which, at that time, Ms. Crabtree owned in fee, as collateral to secure a $20,000.00 loan for a business enterprise that he and Ms. Crabtree's son, Dwayne Crabtree, were beginning. To that end, the Debtor brought her a document to sign, which he represented and she believed was a document giving First National Bank of LaFollette (First National Bank) an interest in the Real Property as collateral to secure the Debtor's $20,000.00 loan. She has since learned that this document was, in fact, a Warranty Deed by which she unknowingly transferred the entirety of her interest in the Real Property to the Debtor. *See* TRIAL EX. 10. She also avers that the Warranty Deed contains a fraudulent acknowledgment by the Debtor's spouse, Jean A. Robbins, who, the Debtor testified, was not present when she executed any documents.

In response, the Debtor argues that he was persuaded by Dwayne Crabtree to form a construction business, Appalachia Contractors, Inc., which they did on May 27, 2004. *See* TRIAL EX. 2. The Debtor testified that they had to obtain financing to pay off Dwayne Crabtree's construction equipment, and since the company was new, Ms. Crabtree allowed the use of her home as security for the loan. The Debtor testified that First National Bank would not give him a loan on the Real Property, so Ms. Crabtree "transferred" the house to him to obtain the loan, which would be paid off, after which the Real Property was to be transferred back to Ms. Crabtree. The Real Property was transferred to the Debtor on May 4, 2004, by a Warranty Deed executed by Ms. Crabtree whose signature was notarized by the Debtor's wife, Jean A. Robbins. The Debtor, on the

4

same day, then obtained a loan for the alleged purchase price of the Real Property from First National Bank for $76,477.60, which he secured with the Real Property.  He deposited the loan proceeds into an account for Appalachia Contractors, Inc., transferring $56,075.60 to C & M Contracting, which was owned by Dwayne Crabtree, in order to pay off the equipment loans, keeping $10,000.00, and using the remainder to fund Dwayne Crabtree's construction expenses. The Debtor has not transferred ownership of the Real Property back to Ms. Crabtree.

By her Counter-Complaint and Third-Party Complaint filed in the State Court Lawsuit, the Plaintiff seeks the following relief:  (1)  a judgment setting aside and avoiding the May 4, 2004 Warranty Deed from Ms. Crabtree to the Debtor; (2)  that the Trust Deed securing the Debtor's $76,477.60 loan from First National Bank of LaFollette be set aside and declared void; (3) a judgment against the Debtor and his wife for compensatory and punitive damages; and (4) general relief.  The State Court Lawsuit remains pending.

## II

The Plaintiff seeks a determination that any judgment obtained against the Debtor is nondischargeable under 11 U.S.C.A. § 523, which, as material to this adversary proceeding, provides:

> (a) A discharge under section 727[4] . . . of this title does not discharge an individual debtor from any debt—

---

[4] Chapter 7 debtors receive a discharge of pre-petition debts, "[e]xcept as provided in section 523 of this title[.]" 11 U.S.C.A. § 727(b) (West 2004).  This accomplishes the goals of Chapter 7 to relieve "honest but unfortunate" debtors of their debts and allow them a "fresh start" through this discharge.  *Buckeye Retirement, LLC v. Heil (In re Heil),* 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003) (quoting *In re Krohn,* 886 F.2d 123, 125 (6th Cir. 1989) (citing *Local Loan Co. v. Hunt,* 54 S.Ct. 695, 699 (1934))).  The Order granting the Debtor's discharge was entered on May 16, 2006.

5

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

. . . .

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

. . . .

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request; [or]

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

. . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

. . . .

(c)(1) Except as provided . . ., the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

11 U.S.C.A. § 523 (West 2004).

6

Because § 523(a) is construed strictly against the Plaintiff and liberally in favor of the Debtor, the Plaintiff bears the burden of proving each of the elements necessary for a determination of nondischargeability by a preponderance of the evidence. *Grogan v. Garner*, 111 S. Ct. 654, 661 (1991); *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998). Additionally, the bankruptcy court possesses the jurisdiction and authority to adjudicate the Plaintiff's claims and award any necessary damages. *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 792 (Bankr. E.D. Tenn. 2003) (citing *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 965 (6th Cir. 1993)).

Section 523(a) is implemented procedurally by Federal Rule of Bankruptcy Procedure 4007, which states, in material part:

(a) **Persons entitled to file complaint**
    A debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt.

(b) **Time for commencing proceeding other than under § 523(c) of the Code**
    A complaint other than under § 523(c) may be filed at any time. . . .

(c) **Time for filing complaint under § 523(c) in a chapter 7 liquidation . . .; notice of time fixed**
    A complaint to determine the dischargeability of a debt under § 523(c) [in a chapter 7 liquidation] shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002. On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.

. . . .

(e) **Applicability of rules in Part VII**
    A proceeding commenced by a complaint filed under this rule is governed by Part VII of these rules.

7

FED. R. BANKR. P. 4007; *see* also FED. R. BANKR. P. 7001(6) ("[A] proceeding to determine the

dischargeability of a debt" is an adversary proceeding.).[5]

Pursuant to Rule 4007(c) of the Federal Rules of Bankruptcy Procedure, a complaint for the

determination of the dischargeability of a debt under § 523(a)(2), (4), and/or (6) must be filed within

sixty days from the date of the first meeting of creditors, and if a complaint is not filed prior to that

deadline, the underlying debt is discharged. *See In re Jenkins*, 330 B.R. 625, 629 (Bankr. E.D. Tenn.

2005). Section 523(a)(3)(B) provides the exception to this rule – if a debt falls into within the scope

of § 523(a)(2), (4), or (6), and it was not listed or scheduled, and the creditor did not receive or have

actual knowledge of the case in time to timely file a complaint to determine dischargeability that

would have been successful, the debt is nondischargeable. *WebMD Practice Servs. v. Sedlacek (In*

*re Sedlacek)*, 325 B.R. 202, 210 (Bankr. E.D. Tenn. 2005).

There is no time limitation for filing a complaint under § 523(a)(3)(B), nor must a creditor

obtain permission from the court to do so, unless the case has been closed and must be reopened.

*See* FED. R. BANKR. P. 4007(b) ("A complaint other than under § 523(c) may be filed at any time

[and without payment of a fee in a closed case]."); *see also First Nat'l Ins. Co. of Am. v. Bartomeli*

*(In re Bartomeli)*, 303 B.R. 254, 269 (Bankr. D. Conn. 2004) ("[A §] 523(a)(3)(B) complaint as to

nondischargeability of a debt can be brought any time, any place. 'In short, the penalty to the debtor

---

[5] As an initial matter, the Debtor testified that he was instructed by his bankruptcy attorney that he did not have to list either the Plaintiff or Ms. Crabtree in his statements and schedules and/or creditor matrix because he did not owe any debt to them. The Bankruptcy Code defines "creditor" as "[an] entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[.]" 11 U.S.C.A. § 101(10)(A) (West 2004). "Claim" is defined as "[a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C.A. § 101(5)(A) (West 2004). Under these definitions, it was irrelevant whether the Debtor owed an actual liquidated debt to the Plaintiff and/or Ms. Crabtree at the time he filed his bankruptcy case. A lawsuit filed against him by the Plaintiff and Ms. Crabtree was pending, thus entitling them to notice of his bankruptcy case.

for failing to schedule a fraud debt or otherwise inform the creditor of the bankruptcy is forfeiture of the right to enjoy exclusive federal jurisdiction and loss of the sixty-day limitations period applicable in the exclusive jurisdiction actions.'") (quoting *Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin)*, 179 B.R. 913, 924 (Bankr. E.D. Cal. 1995)).

Constitutional due process requires proper notice. *Mullane v. Cent. Hanover Bank & Trust Co.*, 70 S. Ct. 652, 657 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). "[I]f a creditor is not given reasonable notice of the bankruptcy case and the relevant bar dates, its claim cannot be constitutionally discharged." *In re O'Shaugnessy*, 252 B.R. 722, 729 (Bankr. N.D. Ill. 2000). Likewise, "[w]hen a debtor does not afford a creditor due process, either by failing to timely schedule a creditor or by scheduling it incorrectly, the creditor's right to object to the dischargeability of a debt cannot be time-barred under Fed. R. Bankr. P. 4007(c)." *Chanute Prod. Credit Ass'n v. Schicke (In re Schicke)*, 290 B.R. 792, 800 (B.A.P. 10th Cir. 2003). This is particularly true in Chapter 7 cases, where "the issue of discharge turns upon notice/knowledge and not the scheduling of the debt[.]" *Massa v. Addona (In re Massa)*, 187 F.3d 292, 297 (2d Cir. 1999). Nevertheless, a debtor who fails to give formal notice but provides actual notice to a creditor in time for the creditor to protect its rights is not precluded from receiving a discharge. *See, e.g., Rowe v. Steinberg*, 253 B.R. 524, 528 (E.D. Mich. 2000) (holding that oral notification of a debtor's bankruptcy constituted actual notice for the purposes of Rule 4007 deadlines). "The debtor's duty to afford due process is counterbalanced by the creditors'

duty to object to the discharge of a debt if it has *any* notice *or* knowledge [of] a Chapter 7 case prior to the expiration of the time limitation set forth in [Rule] 4007(c)." *Schicke*, 290 B.R. at 800.

"Actual knowledge" is not defined in the Bankruptcy Code, but it has been defined as "[p]ositive, in contrast to imputed or inferred, knowledge of a fact.  For notice purposes, 'actual knowledge' embraces those things of which the one sought to be charged has express information and those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed." BLACK'S LAW DICTIONARY 873 (6th ed. 1994).  What constitutes the proper amount of time to allow a creditor to timely file a complaint as contemplated by § 523(a)(3)(B) is likewise not expressly set forth in the Bankruptcy Code and is thus open to interpretation.

Some courts have determined, pursuant to the wording of Rule 4007(c) requiring the court to give notice of the filing deadlines at least thirty days prior to their expiration, that a creditor must have at least thirty days actual notice or the "to timely request" requirement is not met.  *See, e.g., Mfrs. Hanover v. Dewalt (In re Dewalt)*, 961 F.2d 848, 851 (9th Cir. 1992) (where creditor received seven calendar days notice); *In re Burrier*, 184 B.R. 32, 34 (Bankr. N.D. Ohio 1995) (where creditor received less than thirty days notice).  Other courts have approached the question on a case-by-case basis, depending on the totality of the circumstances.  *See, e.g., Grossie v. Sam (In re Sam)*, 894 F.2d 778, 781 (5th Cir. 1990) (holding that eighteen days notice was sufficient for a creditor to protect its rights); *In re Linzer*, 264 B.R. 243, 250 (Bankr. E.D.N.Y. 2001) (nine days notice is inadequate); *Herman v. Bateman (In re Bateman)*, 254 B.R. 866, 874 (Bankr. D. Md. 2000) (twenty-six days notice is adequate).

10

In the Sixth Circuit, the deadline imposed by Rule 4007(c) is not jurisdictional and is therefore subject to equitable defenses, including estoppel and equitable tolling. *Nardei v. Maughan (In re Maughan)*, 340 F.3d 337, 343-44 (6th Cir. 2003). This decision does not require the bankruptcy court to allow an untimely filed complaint, but simply allows it to consider equitable defenses to Rule 4007(c). *See In re Witt*, 304 B.R. 340, 344 (Bankr. E.D. Tenn. 2003). The doctrine of equitable estoppel "precludes a party to a lawsuit from raising a certain defense, regardless of the merits of the defense, because of some improper conduct on that party's part." *State Bank of Coloma v. Nat'l Flood Ins. Program*, 851 F.2d 817, 819 (6th Cir. 1988). "The traditional elements of equitable estoppel are: (1) misrepresentation by the party against whom the estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Mich. Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004).

Distinguished from equitable estoppel is equitable tolling, which "applies when there is no allegation of impropriety on the defendant's part." *Hill v. United States Dep't of Labor*, 65 F.3d 1331, 1335 n.2 (6th Cir. 1995). Courts generally consider the following five factors when examining whether to apply the doctrine of equitable tolling: "(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." *Maughan*, 340 F.3d at 344 (quoting *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988)). When there is no dispute that the creditor received notice of the deadlines, the court's "inquiry must focus on the diligence used by the plaintiff in pursuing its rights

11

and the resulting prejudice, if any, to the defendant." *Maughan*, 340 F.3d at 344 (quoting *First Bank Sys. v. Begue (In re Begue)*, 176 B.R. 801, 804 (Bankr. N.D. Ohio 1995)).

The Plaintiff clearly filed her Complaint outside the January 30, 2006 deadline. There is no dispute that neither the Plaintiff nor Ms. Crabtree was listed or scheduled by the Debtor in his statements and schedules despite the pendency of the State Court Lawsuit, and that neither had notice of the bankruptcy case. The Plaintiff did, however, receive actual knowledge of the bankruptcy case on January 26, 2006, through her attorney of record. The issue is, therefore, whether four days notice was sufficient to allow her to file a complaint for the determination of dischargeability prior to the January 30, 2006 deadline.

The court finds that four days notice was not reasonable notice under § 523(a)(3)(B). The Debtor's failure to list the Plaintiff or Ms. Crabtree as a creditor, albeit on the advice of his attorney, was a conscious, purposeful decision. There is also no dispute that the Debtor's attorney then waited until January 26, 2006, four days before the January 30, 2006 deadline, to provide actual notice by faxing the notice of commencement of case to the Plaintiff's attorney. The Plaintiff then filed her Complaint two months later, on March 30, 2006. It is immaterial that the Plaintiff's Complaint somewhat mirrors the complaint that was filed in the state court. Four days actual notice does not constitute sufficient notice under the notion of constitutional due process, and it would be inequitable to deny the Plaintiff and Ms. Crabtree the opportunity to have their day in court. As such, under the doctrine of equitable tolling, the court finds that the Complaint is not barred.

**III**

12

Although the court finds that the Plaintiff did not have sufficient notice to timely file a complaint requesting a determination of discharge, § 523(a)(3)(B) still requires that the elements of § 523(a)(2), (4), and/or (6) be satisfied.  If the Plaintiff cannot satisfy one of those subsections, the Complaint will be dismissed, and any claim the Plaintiff and/or Ms. Crabtree have against the Debtor will be discharged.

### A

To satisfy § 523(a)(2)(A), the Plaintiff must prove that the Debtor obtained money, property, or services through material misrepresentations that he knew were false or that he made with gross recklessness, that the Debtor intended to deceive the Plaintiff, that the Plaintiff justifiably relied on the Debtor's false representations, and that the Plaintiff's reliance was the proximate cause of her losses.  *See Copeland*, 291 B.R. at 760 (citing *Rembert*, 141 F.3d at 280).

First, the Plaintiff must prove that the Debtor engaged in conduct that was somewhat "blameworthy," and his fraudulent intent may be "inferred as a matter of fact" based on the totality of the circumstances.  *Copeland*, 291 B.R. at 759 (citing *Commercial Bank & Trust Co. v. McCoy (In re McCoy)*, 269 B.R. 193, 198 (Bankr. W.D. Tenn. 2001)).  Material misrepresentations, omissions, and actual fraud all fall within the scope of § 523(a)(2)(A).  *Copeland*, 291 B.R. at 759; *see also Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001) ("Actual fraud as used in 11 U.S.C. § 523(a)(2)(A) is not limited to misrepresentations and misleading omissions.").

> "[F]alse pretense" involves implied misrepresentation or conduct intended to create and foster a false impression, as distinguished from a "false representation" which is an express misrepresentation[, while a]ctual fraud "consists of any deceit, artifice,

trick, or design involving direct and active operation of the mind, used to circumvent and cheat another— something said, done or omitted with the design of perpetrating what is known to be a cheat or deception."

*Copeland*, 291 B.R. at 760 (quoting *Ozburn v. Moore (In re Moore)*, 277 B.R. 141, 148 (Bankr. M.D. Ga. 2002), and *First Centennial Title Co. v. Bailey (In re Bailey)*, 216 B.R. 619, 621 (Bankr. S.D. Ohio 1997)); *see also Peoples Sec. Fin. Co., Inc. v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983) (For the purposes of § 523(a)(2)(A), "false representations and false pretenses encompass statements that falsely purport to depict current or past facts.").

> On the other hand,
>
> a broken promise to repay a debt, without more, will not sustain a cause of action under § 523(a)(2)(A). Instead, central to the concept of fraud is the existence of scienter which, for the purposes of § 523(a)(2)(A), requires that it be shown that at the time the debt was incurred, there existed no intent on the part of the debtor to repay the obligation.

*EDM Mach. Sales, Inc. v. Harrison (In re Harrison)*, 301 B.R. 849, 854 (Bankr. N.D. Ohio 2003) (citations omitted). Intent to deceive requires proof that the Debtor made false representations that he knew or should have known would convince the Plaintiff to provide property or services. *Copeland*, 291 B.R. at 765-66. "'Fraudulent intent requires an actual intent to mislead, which is more than mere negligence. . . . A 'dumb but honest' [debtor] does not satisfy the test.'" *Copeland*, 291 B.R. at 766 (quoting *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997)). Fraudulent intent may be inferred by examining the Debtor's conduct to determine if she presented the Plaintiff with "'a picture of deceptive conduct . . . indicat[ing] an intent to deceive.'" *Copeland*, 291 B.R. at 766 (quoting *Wolf v. McGuire (In re McGuire)*, 284 B.R. 481, 492 (Bankr. D. Colo. 2002)).

Finally, § 523(a)(2)(A) also requires justifiable reliance by the Plaintiff; i.e.,she must prove that she actually relied on the Debtor's representations and that, based upon the facts and circumstances known to her at the time, such reliance was justifiable. *Copeland*, 291 B.R. at 767. Justifiable reliance can be found even if the Plaintiff "'might have ascertained the falsity of the representation had he made an investigation.'" *Copeland*, 291 B.R. at 767 (quoting *McCoy*, 269 B.R. at 198).

Based upon the testimony of the witnesses and the exhibits filed, the court finds that the Debtor, with the requisite fraudulent intent, misrepresented to Ms. Crabtree that she was signing a document allowing the Debtor to pledge the Real Property as collateral to secure a $20,000.00 loan when, in fact, he caused her to sign a Warranty Deed transferring the Real Property to him which he thereafter pledged as collateral to secure a loan in excess of $74,000.00. The court further finds that Ms. Crabtree justifiably relied upon the Debtor's representations, based upon her limited ability to read or understand legal documents and in reliance on the fact that she trusted the Debtor, her half-brother.

The Debtor testified that he sought a loan from First National Bank in order to enter into a business with Dwayne Crabtree, and that they required Ms. Crabtree's home as security because the business, Appalachia Contractors, Inc., was new and could not obtain a loan on its own.[6] The Debtor testified that he told Ms. Crabtree that the loan would be approximately $75,000.00, because he had to pay off equipment owned by Mr. Crabtree, and that $56,075.60 was paid to Citizens State

---

[6] Appalachia Contractors, Inc., was incorporated by the State of Tennessee on May 27, 2004. *See* TRIAL EX. 2. The Debtor testified that it is now dissolved.

Bank in Monteagle, Tennessee, to be credited to C & M Contracting for payment on Mr. Crabtree's equipment. *See* TRIAL EX. 3.

The Debtor's testimony with respect to the purpose for obtaining a loan from First National Bank was substantiated in part by Ms. Crabtree, who testified that the Debtor and Dwayne Crabtree wanted to go into business together and needed $20,000.00 for start-up costs, and that the Debtor agreed to use her house as collateral. Ms. Crabtree denied, however, authorizing the transfer of her house to the Debtor, and she testified that she did not know the document she was signing at the Debtor's request was a Warranty Deed. Instead, she testified that the Debtor informed her that she was just signing documents to use her house as collateral for the loan and that she relied upon the Debtor's representations to that extent. She also testified that she never received the $75,000.00 from First National Bank and that the endorsement signature on the back of the check is not hers.

The court finds Ms. Crabtree's testimony credible and to accurately recount the representations made to her by the Debtor in fraudulently obtaining the May 4, 2004 Warranty Deed which then led to the $75,000.00 loan from First National Bank. The Debtor's misrepresentation is further corroborated by his admission that the acknowledgment of Ms. Crabtree's signature on the May 4, 2004 Warranty Deed is false. Ms. Crabtree testified that Jean Robbins, the Debtor's wife, and the notary public who acknowledged her signature on the Warranty Deed, was not present when the Debtor presented documents to her for signature.[7] The Debtor acknowledged, without equivocation, on cross-examination that his wife was not present when he took the documents to Ms.

---

[7] In compliance with Tennessee law, the acknowledgment on the Warranty Deed recites, in material part: "Personally appeared before me, the undersigned authority, as Notary Public . . . **Hazel Crabtree, Widow**, with whom I am personally acquainted, and who acknowledged that she executed the within instrument for the purposes therein contained." This acknowledgment is dated May 4, 2004, and is signed under seal by Jean Robbins, "Notary Public."

Crabtree and did not see Ms. Crabtree sign the Warranty Deed.  When asked by Plaintiff's counsel if he asked his wife to "put her notary acknowledgment on that deed," the Debtor stated "Yes."

Despite the use of the proceeds to fund Appalachia Contractors, Mr. Jones, Assistant Vice President and loan officer for First National Bank, testified that he made a loan to the Debtor in April 2004, who sought to borrow approximately $70,000.00 in order to buy a house to "help a lady out."[8]  Mr. Jones stated that the Debtor advised that the lady would still live in the house and possibly buy it back from him at some point.  Accordingly, the loan was approved, and closing documents were prepared by the Bank's attorneys.  The Debtor indicated that Ms. Crabtree, the lady from whom he was purchasing the house, could not come in to the Bank to execute documents, and, based upon the Debtor's good standing business relationship with First National Bank, Mr. Jones allowed the Debtor to take the closing documents off-site for execution.  The loan closed on May 4, 2004, and First National Bank issued a check in the amount of $74,748.47 payable to Ms. Crabtree. TRIAL EX. 13 and 15.  This check was endorsed "Pay to the Order of Appalachia Contractors," with a signature purporting to be that of Hazel Crabtree, and deposited into a bank account at First Volunteer Bank in the name of "Harold D. Robbins dba Appalachia Contractors" on May 5, 2004. *See* TRIAL EX. 5; TRIAL EX. 15.  Ms. Crabtree testified that she never saw this check and that she did not endorse it, nor did she authorize anyone else to sign for her.  The Plaintiff also testified that the endorsement on the check was not her mother's signature.

---

[8] The Debtor's representation to Mr. Jones is corroborated by the Uniform Residential Loan Application dated April 27, 2004, which indicates that the Debtor sought a loan to purchase residential real property to be used as an investment for resale.  TRIAL EX. 6.

On May 5, 2004, the Register of Deeds for Campbell County, Tennessee, recorded the Warranty Deed transferring the Real Property from Ms. Crabtree to the Debtor. The Plaintiff and Ms. Crabtree do not dispute that the Warranty Deed was, in fact, executed by Ms. Crabtree; however, Ms. Crabtree testified further that she was not advised by the Debtor that the document would transfer her home into his name, and that she would not have signed it had she been aware of its purpose. The record also establishes that Ms. Crabtree has a limited education, that she can read and write to a limited extent, that she has cataracts and glaucoma which limits her vision, and that she requires a conservator because she cannot handle her personal financial affairs alone. She testified that she and her deceased husband did have loans on their home in the past and that she understands the concept of a deed of trust, but that she has always relied upon the person at her bank to prepare everything for her.

Again, the court finds Ms. Crabtree's testimony that she was misled by the Debtor into transferring her home to him to be credible. The proof also establishes that the Debtor withheld from Ms. Crabtree the knowledge that she had, in fact, transferred the Real Property until he filed an unlawful detainer action seeking to evict her from the Real Property in December 2004. In his words, he filed the eviction action "to wake them up" and force Dwayne Crabtree to make payments to Appalachia Contractors from his construction jobs. The Debtor's actions, with respect to Ms. Crabtree, evidence misrepresentation with an intent to deceive, or at the very least, a reckless indifference for the truth. Furthermore, Ms. Crabtree's reliance upon the Debtor's representations was justifiable, considering their familial relationship, and her physical and educational limitations. Accordingly, the court finds that the elements of § 523(a)(2)(A) have been satisfied, and any

18

obligation of the Debtor to the Plaintiff in her fiduciary capacity as conservator for Ms. Crabtree will be nondischargeable.

## B

Section 523(a)(4) allows a debt obtained by embezzlement, larceny, or through fraud or defalcation while acting in a fiduciary capacity to be nondischargeable.  11 U.S.C.A. § 523(a)(4). For the purposes of § 523(a)(4), embezzlement is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996).  Larceny under § 523(a)(4) is proved if the debtor wrongfully and with fraudulent intent takes property from its rightful owner, *see Great Am. Ins. Co. v. O'Brien (In re O'Brien)*, 154 B.R. 480, 483 (Bankr. W.D. Tenn. 1993) (citing *Kaye v. Rose (In re Rose)*, 934 F.2d 901, 903 (7th Cir. 1991)), and differs from embezzlement because the embezzler's initial acquisition of the property at issue is lawful.  *Aristocrat Lakewood Nursing Home v. Dryja (In re Dryja)*, 259 B.R. 629, 632 (Bankr. N.D. Ohio 2001).  Defalcation under § 523(a)(4) requires proof of:  "1) a fiduciary relationship; 2) breach of that fiduciary relationship; and 3) a resulting loss." *R.E. Am., Inc. v. Garver (In re Garver)*, 116 F.3d 176, 178 (6th Cir. 1997).  In order to prove a fiduciary relationship, "the debtor must hold funds in trust for a third party." *Garver*, 116 F.3d at 179.  Accordingly, "the defalcation provision of § 523(a)(4) is limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Garver*, 116 F.3d at 180.

It appears that the Plaintiff is arguing that the Debtor was in a fiduciary relationship with Ms. Crabtree and that he breached that relationship, whereby nondischargeability for defalcation is

proper. There is nothing, however, in the record to indicate that an actual trust existed between the parties, and in the Sixth Circuit, in order for the court to find defalcation, an actual trust must be present. As such, the Plaintiff has not met her burden of proof with respect to § 523(a)(4).

C

The Plaintiff also avers the applicability of § 523(a)(6) for a "willful and malicious" injury. In order to be successful under this subsection, the Plaintiff must prove, by a preponderance of the evidence, the existence of "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 118 S. Ct. 974, 977 (1998); *Grogan v. Garner*, 111 S. Ct. 645, 661 (1991) (burden of proof as to nondischargeability actions). In other words, the Debtor must have either desired to cause the consequences of his actions, or he believed with reasonable certainty that such consequences would occur. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999); *Guthrie v. Kokenge (In re Kokenge)*, 279 B.R. 541, 543 (Bankr. E.D. Tenn. 2002). In the Sixth Circuit, "unless the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it, he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz*, 190 F.3d at 464; *Kokenge*, 279 B.R. at 543 (citations omitted).

"An act of conversion may constitute willful and malicious injury depending on whether or not the debtor intended to cause the harm or was substantially certain that such harm would occur." *Sweeney v. Lombardi (In re Lombardi)*, 263 B.R. 848, 853 (Bankr. S.D. Ohio 2001). Under Tennessee law, conversion is an intentional tort and requires proof that a party appropriated another's property for his own use, by exercising dominion and control in exclusion or defiance of

20

the owner's right to use and benefit from the property.  *Mammoth Cave Prod. Credit Ass'n v.*

*Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977).

Based upon the record, the court finds that the Debtor did misappropriate Ms. Crabtree's

Real Property by inducing her into signing a Warranty Deed transferring it to him while leading her

to believe that she was simply pledging the house as collateral for a loan and that he either knew or

should have known that Ms. Crabtree was losing her ownership thereof and could be forced from

the house.  The Debtor then exercised dominion and control over the Real Property first by filing

a detainer warrant to evict Ms. Crabtree from the premises, and second, by not paying First National

Bank and relinquishing his interest in the Real Property to First National Bank, which has instituted

foreclosure proceedings.  The Circuit Court for Campbell County has held that First National Bank

may proceed with its foreclosure, although the Plaintiff and Ms. Crabtree have appealed that

decision, and no determination has been made by the court of appeals.  Nevertheless, Ms. Crabtree

no longer owns the Real Property, and she has clearly been injured by the Debtor's intentional

actions against her, justifying a finding that any debt owed as a result thereof is nondischargeable

pursuant to § 523(a)(4).

In summary, the court finds that the Plaintiff has met her burden of proof with respect to 11

U.S.C.A. § 523(a)(2)(A) and (6).  Accordingly, any judgment that she might obtain against the

Debtor in the State Court Lawsuit with respect to the transfer of her home on May 4, 2004, will be

nondischargeable.[9]

---

[9] Because the Circuit Court for Campbell County, Tennessee, has all the parties before it essential to the
determination of the damages issue, this court cannot make a finding on damages and will defer to that court to resolve
the question relative to amount of damages to which the Plaintiff may be entitled.  Whatever the amount, any judgment

(continued...)

An order consistent with this Memorandum will be entered.


FILED:  April 19, 2007

                              BY THE COURT

                              */s/  RICHARD STAIR, JR.*

                              RICHARD STAIR, JR.
                              UNITED STATES BANKRUPTCY JUDGE

---

[9](...continued)
for damages received by the Plaintiff against the Debtor in the State Court Lawsuit will be nondischargeable.